PHOENIX NATIONAL BANK v. J. J. SAUCIER.

[59 South. 91.]

BILLS AND NOTES. *Transfer. Bona fide purchaser. Defenses. Code*
1906, *section* 4001.

  A promissory note payable to the order of "C" or bearer is assigned
by mere delivery and the indorsement of the note by "C" would be
mere surplusage, and against such a note in the hands of a pur-
chaser for value without notice the maker cannot claim the de-
fenses provided by section 4001 of the Code 1906, commonly called
our "anti-commercial statute."

APPEAL from the circuit court of Lamar county.
HON. A. E. WEATHERSBY, Judge.

Suit by Phoenix National Bank against J. J. Saucier
and others. From a judgment for defendants, plaintiff
appeals.

The appellant was plaintiff in the court below, and
apepllees were defendants. This suit was begun by a
declaration filed in the circuit court on a note, which is
copied in the opinion. The defendants pleaded failure
of consideration, in that the property sold was not as
represented.

Plaintiff's contention is that it is an innocent pur-
chaser for value without notice of a note payable to bear-
er, and that therefore the provisions of Code, sec. 4001,
do not control. Said section provides: "All promis-
sory notes, and other writings for the payment of money
and other things, may be assigned by indorsement,
whether the same be payable to order or assigns or not,
and the assignee or indorsee may maintain such ac-
tion thereon, in his own name, as the assignor or indor-
ser could have maintained; and in all actions on such
assigned promissory note, bill of exchange, or other
writing for the payment of money or other thing, the
defendant shall be allowed the benefit of all want of law-

ful consideration, payments, discounts, and set-offs made, had or possessed against the same previous to notice of assignment in the same manner as though the suit had been brought by the payee; and the assignee or indorsee of any such instrument may maintain an action against the person or persons who may have indorsed the same, as in case of inland bills of exchange; but when any debt shall be lost by the negligence or default of an assignee or indorsee, the assignor shall not be liable on the assignment or indorsement. The assignee of a claim for the purchase money of land may enforce the vendor's lien as the vendor could.''

*Greenlaw & Whitthorne,* and *F. M. Hunt,* for appellant.

In pleading, *mala fides* must be distinctly alleged, and an allegation that the party is not the *bona fide* holder is not sufficient.

*Uther* v. *Rich,* 10 Addison, Adolphus & Ellis, 784. So that the points in the answer pleading special matters are not sufficient to even authorize the introduction of any evidence.

In the case of *Estabrook* v. *Boyle,* 83 Mass. 412, it was held that the fact that the indorsee of a negotiable note indorsed in blank who received it from other indorsees knew at the time of receiving it that they were and had been engaged in the illegal sale of spirituous liquors, taking notes in payment, is not sufficient to put him upon inquiry as to the consideration.

The indorsement is a separate contract and is governed by the *lex loci,* that is, by the law of the place where made, so that this note being executed in Mississippi, would be governed by the law of Mississippi so far as concerns its execution. If it was indorsed in Tennessee, the indorsement would be governed by the law of Tennessee. The effect of the indorsement was to make it payable to bearer so far as J. Crouch & Son

were concerned. It had already been payable to bearer by the makers themselves.

*Lee* v. *Sellick,* 33 N. Y. p. 615; *O'Callaghan* v. *Thomond,* 3 Taunt. p. 82; *Tremby* v. *Vigmer,* 1 Bingam (N. C.), 159.

Such are the decisions in the United States courts, in Alabama, Illinois, Indiana, Iowa, Louisiana, New Jersey, Ohio and West Virginia.

It will be as reasonable an argument that where there are several makers of a joint note, and the credit of part of them is good, and the credit of part of them is bad, and the purchaser of the note takes same on the faith of those who are solvent, that thereby those whose credit is not good are discharged from the note, as is the argument that because the appellant bought the note on the faith of the indorsement of J. Crouch & Son, therefore the appellees are entitled to defend against the note.

The rule as to *mala fides* is incorporated in the negotiable instrument act which is in force in thirty-four states of the union. Several states, notably Indiana, have refused to adopt the negotiable instrument act on the ground, that already either by statute or decisions, the law of negotiable instruments is so nearly identical with the provisions of the negotiable instrument act, that it is unnecessary to re-enact it in such states. Uniformity in the decisions throughout the country is essential in the establishment of business relations, and commercial honesty is promoted by uniformity of decisions to a greater extent than by any other policy which can be pursued by the higher tribunals.

*C. G. Mayson,* for appellees.

The contention of counsel for appellant that want of or a failure of consideration could not be shown, in a suit on the note, is untenable and a palpable misconception of the meaning of the statute. It is to be observed in this case that the suit is on an indorsed note; the

averment of the declaration is, the said J. Crouch & Son "assigned the said note by indorsement under their hands." The statute confers the right on the defendant, in all actions or any such assigned promissory notes, to avail himself of defects in the paper. Code 1906, sec. 4001.

It is not material whether the note was originally made payable to bearer or order. When it was indorsed, the indorsement made a new contract. If the defenses mentioned in the statute could be set up by the maker against the payee, certainly they could also be set up by the maker against the indorsee of the payee. The indorsement of instruments payable to bearer, although not necessary to pass the legal title thereto, will impose upon the indorser the same liability as that which rests upon the indorser of paper payable to order and requiring indorsement to pass the legal title thereto: Tiedman on Com. Pap., sec. 257a; *Bean* v. *Biggs,* 63 Am. Dec. 464; *Cover* v. *Myers,* 32 Am. St. Rep. 395.

The assignor of instruments payable to bearer—and assignment by mere delivery—warrants the genuineness of the signatures and that the parties have capacity to contract, but does not warrant the solvency of the parties thereto. If the assignee is skeptical about the paper being paid, he may protect himself by an indorsement as the appellant did in this case. Before the appellant can assume the attitude of a bearer of the note, it must be forced to the position of being obliged to look exclusively to the makers for payment. If it, as its president and cashier testifies that it did so, required the payees, for its protection to indorse it, then it is the holder of the note by virtue of the indorsement and not a bearer by mere delivery, without reference to whether it was made payable to order or bearer.

The fact that the indorsement of Crouch & Son was blank places the appellant in no better attitude than if it had been special. In neither event the defenses per-

mitted by the statute would have availed the makers. *Etheridge* v. *Galligher,* 55 Miss. p. 458; *Brown* v. *Union Bank,* 62 Miss. 754.

If the appellant had sold the note before maturity to a *bona fide* holder, without further indorsement, a different question would be presented. Such purchaser would in a strict sense, be the bearer, and it would have devolved on the appellees to show that such party was not a *bona fide* holder for value.

*Craig* v. *Vicksburg,* 31 Miss. 216, and the cases following it are not authority in this case. An examination of those cases shows, either that the instruments were payable to bearer and never indorsed, or were payable in some other jurisdiction where the law merchant prevails. In the case of instruments payable to bearer, or of accommodation paper executed for negotiation, the holder is obliged to look to the makers only for payment, because be bought solely on the faith of what its face imparted, in the belief that they were solvent and payment could be coerced.

Even though it be contended that the appellant was a *bona fide* holder for value, yet there was fraud in the inception of the contract. The representations as to the character of the horse were not true. The warranty was broken as soon as made, and under Code 1906, sec. 4001, the makers sould show a breach even as against *bona fide* purchasers. *Millsaps* v. *Bank,* 69 Miss. 918; s. c., Miss. 361.

Cook, J., delivered the opinion of the court.

The note sued on is as follows, viz.:
"$1000.00
"200.00 Purvis, Mississippi, Feb. 28, 1901.

---

"$800.00　　On October 1, 1908, after date, for value received, we promise to pay to the order of J. C. Crouch & Son, or bearer, one thousand dollars, at the Lamar

County Bank, of Purvis, Mississippi, with interest at the rate of six per cent per annum from date until paid. Interest payable annually. If suit is brought on this note, we promise and agree to pay a reasonable attorney's fee. The drawers and indorsers severally waive presentment for payment, protest, notice of protest, and nonpayment of this note, and to secure the payment of this note the right is expressly waived to claim any and all exemptions allowed by the constitution and laws of the state of Mississippi or any other state. J. J. Saucier et al."

On back of note is indorsed the following: "Paid on this note Feb. 28, 1907, two hundred dollars. $200.00."

Indisputably, plaintiff was a *bona fide* holder for value, without notice of defenses set up in the pleadings. The defendants, makers of the note, claim that the note was given for the purchase money of a certain stallion sold to them by the payees, J. C. Crouch & Son; that the stallion was represented to be a German coach horse, and it was guaranteed that he would foal seventy-five per cent. of the mares bred to him. They say, further, that the horse was not what he was represented and guaranteed to be, and that the amount of cash paid at the time of the execution of the note, and credited as a payment thereon, represents the full value of the animal. In other words, defendants claimed the defenses provided by section 4001 of the Code of 1906, commonly called our "anti-commercial statute."

Was this note assignable by mere delivery, or was it such a note as required the indorsement of the payee to convey title to a purchaser? If the note had been made payable to "J. C. Crouch & Son, or bearer," it would not be questioned that a delivery to the purchaser, without indorsement, conveyed title to same free from all defenses which the makers may have against the original payees. It is contended, however, that the peculiar phraseology of the note changes its character,

and constitutes a note payable to order, and that the indorsement was necessary to the transfer of the paper.

We do not agree with this contention. In our opinion the indorsement was merely surplusage, the note being payable to bearer; and though it may be true that the payees became sureties, or grantors, by reason of their indorsement in blank, it does not follow that the makers would be entitled to the defenses claimed under section 4001 against purchasers for value without notice. Since the note was in legal effect payable to bearer, there was no issue to submit to the jury, and they should have been directed to find a verdict for plaintiff

*Reversed and remanded.*